IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH RUBEN BRIDGEWATER,      No. CIV S-07-2511-FCD-CMK-P

    Plaintiff,

  vs.                           <u>ORDER</u>

LOCKART, et al.,

    Defendants.

                                   /

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are: (1) defendants' motion for summary judgment (Doc. 48); and (2) plaintiff's motion for a stay of proceedings (Doc. 56).

**I.  BACKGROUND**

Plaintiff names the following as defendants: Felker, Faulk, Lockart, Spalding, and Moore. Plaintiff alleges that "African-Americans [are] being systematically . . . shipped and housed at High Desert State Prison." He also alleges an "underground policy of 'not allowing them to be transferred.'" Plaintiff claims that he was improperly transferred to High Desert State Prison in retaliation for a prison grievance he filed in February 2007. He claims that he was

1  informed by defendant Lockart that ". . . he and his boys knew all about [plaintiff] filing paper
2  work [the February 2007 grievance] against this prison (High Desert) and that [plaintiff would]
3  wish [he hadn't] done so." Plaintiff asserts that defendant Moore informed him that he was
4  being "fast tracked" to a program for behavior modification because he had filed grievances
5  concerning his transfer. He also claims that he was improperly classified as a member of a prison
6  gang in retaliation and as a form of harassment. Finally, he claims that his prison grievances
7  were intentionally "lost."

8  As to defendant Felker, plaintiff claims that he is responsible for the actions of his
9  subordinates. As to defendant Faulk, plaintiff asserts that he willfully and knowingly
10 participated in the alleged retaliation. It appears that liability against Faulk is alleged on the basis
11 of his function as a facility captain responsible for the conduct of subordinate correctional
12 officers. As to defendant Spalding, plaintiff alleges that he began the process to improperly label
13 him a gang member. As to defendants Lockart and Moore, plaintiff alleges these were the actual
14 correctional officers who engaged in other various acts of claimed retaliation.

15 Plaintiff states that the facts of his case give rise to a claim of retaliation and a
16 claim of violation of equal protection. Plaintiff specifically admits that the grievance process
17 was not completed as of the time of filing suit. Plaintiff seeks monetary damages and injunctive
18 relief.

19 On February 29, 2008, the court issued findings and recommendations that
20 plaintiff's equal protection claim be dismissed, defendants Felker and Faulk be dismissed, and
21 that the action proceed only on plaintiffs' retaliation claims against defendant Spalding, Lockart,
22 and Moore. The findings and recommendations were adopted in full on May 5, 2008, and all
23 three remaining defendants have appeared in the action.
24 / / /
25 / / /
26 / / /

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/ / /

/ / /

### III.  DISCUSSION

Defendants argue that they are entitled to summary judgment for the following reasons: (1) plaintiff failed to exhaust administrative remedies prior to bringing suit; (2) plaintiff cannot establish the necessary elements of a retaliation claim; and (3) defendants are entitled to qualified immunity.

**A.      Exhaustion**

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.

The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.  548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id.

at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court."  Id. at 94.

As indicated above, plaintiff specifically admits in his complaint that he had not completed the available administrative grievance process as of the date he commenced this action.  A review of defendants' evidence reveals that, while plaintiff filed grievances concerning his prison transfer, these grievances did not complain about any retaliatory conduct.  Specifically, plaintiff complained that prison officials had not followed the correct procedure with respect to his transfer.  Plaintiff's position was that he should have been transferred to a prison closer to his family.  The grievances relating to his transfer, however, do not indicate that plaintiff ever complained that the transfer was ordered because plaintiff had engaged in any protected activity.

### B.     Retaliation Claim

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes,

498 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Defendants argue that plaintiff cannot establish that his transfer was ordered because he filed inmate grievances. Specifically, while plaintiff states that defendants acted in retaliation for a grievance he filed in February 2007, defendants' evidence indicates that no such grievance was ever filed. Exhibit A to plaintiff's complaint is a document entitled "Inmate/Parolee Appeal Form" bearing a submission date of February 28, 2007. At part C of the form, captioned "Informal Level," the following entry, dated July 9, 2007, appears:

> Denied. You are here at HDSP because of available bed space. There are only so many level 4 bed's [sic] through out [sic] the state and you were placed here at HDSP because we had beds.

This same exhibit also suggests that a formal level response was prepared, but no date is indicated for this level response. Defendants conclude that, because the responses were not signed, they must have been "manufactured" by plaintiff. This issue raises a disputed issue of fact – i.e., whether the responses were manufactured – which this court cannot resolve on a motion for summary judgment.

### C. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even

8

if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

In this case, the court finds that the facts viewed in the light most favorable to plaintiff indicate the violation of a clearly established constitutional right. Specifically, there is a dispute as to whether plaintiff ever filed the February 2007 grievance and, if so, whether such filing motivated his prison transfer. In considering qualified immunity, the court must resolve factual disputes in plaintiff's favor. Moreover, the court finds that any reasonable correctional officer would know that ordering a transfer solely because an inmate had filed a grievance would constitute retaliation in violation of the First Amendment.

### IV.  CONCLUSION

While the court cannot agree with defendants that summary judgment is appropriate – either because plaintiff cannot establish a necessary element of his retaliation claim or because defendants are entitled to qualified immunity – the court does agree with defendants that plaintiff failed to exhaust available administrative remedies prior to filing suit.

/ / /

/ / /

/ / /

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment be granted;

2. This action be dismissed without prejudice to failure to exhaust available administrative remedies prior to filing suit;

3. All other pending motions be denied as moot; and

4. The Clerk of the Court be directed to enter judgment of dismissal and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 11, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE